## State Tax on Mortgages to Federal Agencies

SHOCKLEY, Deputy Attorney General, April 7, 1934.—You inquire whether mortgages to the Reconstruction Finance Corporation, Federal land banks, and regional agricultural credit corporations are subject to the State tax imposed upon mortgages offered for record in the several offices of the recorders of deeds of this Commonwealth.

The State tax in question is imposed by section 4 of the Act of April 6, 1830, P. L. 272, 72 PS § 3173, which reads as follows:

"The several recorders of deeds shall demand and receive for every deed, and for every mortgage or other instrument in writing offered, to be recorded, fifty cents."

Your inquiry, insofar as it relates to mortgages executed to Federal land banks, was answered in a formal opinion of this department rendered to Hon. Charles Johnson, former Secretary of Revenue, under date of December 11, 1930.

In that opinion, we reached the conclusion that the State tax in question could not be imposed on mortgages executed to Federal land banks, because such banks and mortgages are instrumentalities of the Government of the United States, and therefore are exempt from State taxation.

Under these circumstances, your inquiry resolves itself into whether or not mortgages to the Reconstruction Finance Corporation and regional agricultural credit corporations are subject to the State tax.

As we pointed out in our opinion mentioned above:

"The 50 cents required to be paid to the various recorders of deeds of this Commonwealth, in accordance with section 4 of said Act of April 6, 1830, when a mortgage or deed is offered to be recorded, is unquestionably a tax. It is separate and distinct from the fee for the recording of the instrument itself. The title of the act and some of the sections therein also expressly refer to these fees as taxes."

It is an established principle of our constitutional system of dual government that the property, instrumentalities, means, and operations whereby the United States exercises its governmental powers are exempt from taxation by the States, and that the property, instrumentalities, means, and operations whereby the States and their political subdivisions exercise their governmental powers

are equally exempt from taxation by the United States: M'Culloch v. Maryland et al., 4 Wheat. 316, 430 (1819); Dobbins v. Commissioners of Erie County, 16 Pet. 435 (1842); Collector v. Day, 11 Wall. 113, 125, 127 (1871); United States v. Railroad Co., 17 Wall. 322 (1873); Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429 (1895); Ambrosini v. United States, 187 U. S. 1 (1902).

This principle of exemption is not statutory, but is implied from the independence of the National and State Governments within their own respective spheres, and from the provisions of the Constitution, which look to the maintenance of the dual system. It is aimed at the protection and self-preservation of the operations of government: M'Culloch v. Maryland et al., supra; and their immunity does not extend "to anything lying outside or beyond governmental functions and their exertion": Indian Motocycle Co. v. United States, 283 U. S. 570, 576 (1931). Where the immunity exists it is absolute, resting upon an "entire absence of power": Johnson v. Maryland, 254 U. S. 51, 55, 56 (1920); but it does not exist "where no direct burden is laid upon the governmental instrumentality, and there is only a remote, if any, influence upon the exercise of the functions of government": Willcuts v. Bunn, 282 U. S. 216, 225 (1931).

In accordance with this principle, which was expressly reiterated in the statute authorizing the creation of the Federal land banks, the United States Supreme Court, in the case of Federal Land Bank of New Orleans v. Crosland, 261 U. S. 374 (1923), reached the conclusion that the State of Alabama was without authority to impose a tax similar to the one in question upon mortgages executed to Federal land banks. It was contended on the part of the State that the Federal land bank had the option of leaving its mortgages off the record and thereby avoiding the imposition of the State tax, but in answer to this, as well as in the determination of the question itself, Mr. Justice Holmes said, at page 378:

"The State is not bound to furnish a registry, but if it sees fit to do so it cannot use its control as a means to impose a liability that it cannot impose directly, any more than it can escape its constitutional obligations by denying jurisdiction to its Courts in cases which those Courts are otherwise competent to entertain. *Kenney v. Supreme Lodge of the World*, 252 U. S. 411, 415. . . .

"Of course the State is not bound to furnish its registry for nothing. It may charge a reasonable fee to meet the expenses of the institution. But in this case the Legislature has honestly distinguished between the fee and the additional requirement that it frankly recognizes as a tax. If it attempted to disguise the tax by confounding the two, the Courts would be called upon to consider how far the charge exceeded the requirement of support, as when an excessive charge is made for inspecting articles in interstate commerce. *Foote v. Maryland*, 232 U. S. 494. But it has made no such attempt. It has levied a general tax on mortgages, using the condition attached to registration as a practical mode of collecting it. In doing so, by the construction given to the statute by the Supreme Court, it has included mortgages that it is not at liberty to reach.

. . . It is said that the lender may collect the money in advance from the borrower. We do not perceive that this makes any difference. The statute says that the lender must pay the tax, but whoever pays it it is a tax upon the mortgage and that is what is forbidden by the law of the United States."

The answer to your inquiry, therefore, depends on whether or not the Reconstruction Finance Corporation and the regional agricultural credit corporations are agencies and instrumentalities of the Federal Government. If this question is answered in the affirmative, the State tax does not apply to mortgages executed to these corporations; if the answer is in the negative, the tax does apply.

There can be no question that the Reconstruction Finance Corporation, which was created by the Reconstruction Finance Corporation Act, approved January 22, 1932, 15 U. S. C. §§ 601-617, is an agency and instrumentality of the United States Government. The capital stock of the corporation is subscribed by the United States of America at the expense of the Treasury of the United States (§ 602); the board of directors consists of the Secretary of the Treasury and six other persons appointed by the President of the United States, by and with the advice and consent of the United States Senate (§ 603); it is entitled to the free use of the United States mails, in the same manner as the executive departments of the Government (§ 604); the corporation may avail itself of the use of information, services, facilities, officers, and employes of any agency of the executive departments of the United States Government (§ 604); it is required to submit a monthly report of all its activities and transactions to the President and to the Senate and House of Representatives (§ 605b (b)); the surplus money of the corporation may be deposited with the Treasurer of the United States, subject to check by the corporation, or in any Federal reserve bank (§ 607); confidential information required by any agency of the Federal Government is made available to the corporation (§ 608); it may issue its obligations only with the approval of the Secretary of the United States Treasury—such obligations are fully and unconditionally guaranteed, both as to principal and interest, by the United States (§ 609); it may request the Secretary of the Treasury to market its obligations, and, in so doing, the Secretary of the Treasury is authorized to use the facilities of the Treasury Department established by law for marketing the obligations of the United States (§ 609). Section 610 provides:

"Any and all notes, debentures, bonds, or other such obligations issued by the corporation shall be exempt both as to principal and interest from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority. The corporation, including its franchise, its capital, reserves, and surplus, and its income shall be exempt from all taxation now or hereafter imposed by the United States, or by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority; except that any real property of the corporation shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed."

Likewise, there can be no doubt that regional agricultural credit corporations are agencies and instrumentalities of the United States Government. Such corporations are created and supported by the Reconstruction Finance Corporation, under section 201 of the Emergency Relief and Construction Act of 1932, approved July 21, 1932, 15 U. S. C. § 605b (e), which reads as follows:

"The Reconstruction Finance Corporation is further authorized to create in any of the twelve Federal land-bank districts where it may deem the same to be desirable a regional agricultural credit corporation with a paid-up capital of not less than $3,000,000, to be subscribed for by the Reconstruction Finance Corporation and paid for out of the unexpended balance of the amounts allocated and made available to the Secretary of Agriculture under section 602 of this title. Such corporations shall be managed by officers and agents to be appointed by the Reconstruction Finance Corporation under such rules and regulations as its board of directors may prescribe. Such corporations are hereby authorized and empowered to make loans or advances to farmers and stockmen, the proceeds of which are to be used for an agricultural purpose

(including crop production), or for the raising, breeding, fattening, or marketing of livestock, to charge such rates of interest or discount thereon as in their judgment are fair and equitable, subject to the approval of the Reconstruction Finance Corporation, and to rediscount with the Reconstruction Finance Corporation and the various Federal reserve banks and Federal intermediate credit banks any paper that they acquire which is eligible for such purpose. All expenses incurred in connection with the operation of such corporations shall be supervised and paid by the Reconstruction Finance Corporation under such rules and regulations as its board of directors may prescribe."

By Executive Order of March 27, 1933, the functions of the Reconstruction Finance Corporation and its board of directors, relating to the appointment of officers and agents to manage regional agricultural credit corporations formed under the Emergency Relief and Construction Act of 1932, and relating to the approval of loans and advances made by such corporations, were transferred to the jurisdiction and control of the Farm Credit Administration (12 U. S. C. § 1148).

Regional agricultural credit corporations are supported entirely by funds of the Federal Government, and are created to further the purposes of the Federal Government in affording credit to the farmers of the country during the current depression. As such, these corporations are undoubtedly agencies and instrumentalities of the Federal Government.

Accordingly, you are advised that the State tax on mortgages, as provided by section 4 of the Act of April 6, 1830, P. L. 272, cannot be imposed or required to be paid upon mortgages executed to the Reconstruction Finance Corporation or to regional agricultural credit corporations, when such mortgages are presented to the recorders of deeds to be recorded in the manner provided by law.

From C. P. Addams, Harrisburg, Pa.