682

EUGENE HOSKINS AND BENA HOSKINS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, REPONDENT.

Docket No. 74749.   Promulgated May 31, 1935.

*William R. Watkins, Esq.*, for the petitioners.
*Carroll Walker, Esq.*, and *L. C. Mitchell, Esq.*, for the respondent.

OPINION.

TRAMMELL: This proceeding is for the redetermination of a deficiency in income tax of $105 for 1932. The only question in controversy is the correctness of the respondent's action in subjecting to tax the compensation received by petitioner Bena Hoskins for her services as director of the public school cafeterias of Fort Worth, Texas.

The petitioners are husband and wife and reside at Fort Worth, Texas. During 1932 Mrs. Hoskins was employed as director of the public school cafeterias by the Fort Worth Independent School District, a political subdivision of the State of Texas, which was organized and created by special act of the Legislature of Texas. For her services in that capacity she received compensation in the amount of $3,400, which was her only income and which the respondent determined was subject to tax and included it as taxable income.

The Fort Worth Independent School District is administered by a board of education consisting of seven members who employ a superintendent of schools and a business manager of schools. At some undisclosed date or dates the board of education caused to be installed in the public school buildings of Fort Worth or in adjoining buildings equipment for the operation of 48 cafeterias. The kitchens of these cafeterias are equipped with such ranges, ovens, and electric refrigeration as are found in any first-class eating place and the dining rooms are equipped with steam tables and display racks. The initial cost of establishing these cafeterias came from the funds of the Fort Worth Independent School District. No charge is made by the board of education to the cafeteria system for the space it uses. In addition to being used for cafeteria purposes the space is used for ordinary class purposes when necessary.

In theory the public elementary school buildings in Fort Worth are so located that a pupil will not have to travel more than a mile

to reach school. With respect to the high schools the distance is greater, being about four miles in some instances. A period of 30 minutes is allowed pupils in all schools for lunch. From two to four lunch periods between eleven o'clock and one o'clock are allowed at the various schools depending upon the size of the school. Under a regulation of the board of education a pupil may bring his lunch to school, or he may get it in the school cafeteria, or if he lives within a sufficiently short distance from the school he may go home for it, but he may not go off the school ground at recess and buy it.

A purpose of the cafeterias is to teach the pupils to eat a balanced diet. With this end in view a plate lunch consisting of a balanced meal is served in the cafeterias at the elementary schools. In the cafeterias at the high schools the pupils have the privilege of making their own selection on the theory that after they have been taught to eat a balanced diet in the elementary schools they will select it when in high school. All pupils who wish to do so eat at the cafeterias and when they do they pay for what they eat. Indigent and undernourished children are not furnished any free meals.

The operation of the cafeterias comes under the general supervision of the business manager employed by the board of education. Each cafeteria has a local manager in charge of it. About 138 persons other than the petitioner were employed in the cafeteria system during 1932. Their salaries ranged from $1.25 a day for the part-time help to $4 a day for the managers of the cafeterias at the larger high schools. The system is operated as a nonprofit-making enterprise, but is so conducted as to be self-sustaining and on a basis that the proceeds from the sale of food will be sufficient to pay for the food and to pay the operating expenses. The receipts from the conduct of the cafeteria system are kept in a depository separately from the general funds of the school system and in an account designated " Cafeteria Department of the Fort Worth Independent School District." The amount of the receipts of the cafeteria system from the sale of food to pupils during 1932 was approximately $200,000. From such receipts the compensation of Mrs. Hoskins, as well as that of all other persons employed in the cafeteria system, was paid.

The procedure through which Mrs. Hoskins was given employment as director of the public school cafeterias was as follows: She was first recommended by the business manager to the superintendent of schools, who in turn recommended her to the board of education, which elected her to the position for a period of one year. The same procedure was followed in employing teachers in the school system, except that the original recommendation for their election was not made by the business manager. The procedure followed in employing the local managers of the cafeterias, together

with the other help employed thereat, was the same as that in the case of Mrs. Hoskins, except that she was the first to recommend their employment. Mrs. Hoskins took no oath of office.

Mrs. Hoskins was the general manager of the cafeteria system and had supervision over the 48 cafeterias. She planned uniform menus of balanced meals to be served in the cafeterias; planned the meals for a school for tubercular children; assisted in purchasing the food and supervised the preparation and serving of it; checked over daily all orders for food and approved the bills of each cafeteria at the end of the month. She helped plan new cafeterias as they were installed. She spent an average of about twelve hours daily in the performance of her work.

The petitioners allege that the respondent erred in determining that the salary here involved constituted taxable income. They contend that Mrs. Hoskins was employed in the exercise of a governmental function and that therefore her salary is exempt from taxation both under the applicable revenue act and on the ground that the Federal Government under the Constitution has no power to tax it. The respondent concedes that the cafeteria system was operated pursuant to and by authority of the laws of the State of Texas and makes no contention that Mrs. Hoskins was not an employee of a political subdivision of that state. He does contend, however, that the operation of the cafeteria system constituted the carrying on of a business by the school district and not the exercise of an essential governmental function, and that the salary constituted taxable income. In the absence of statutory provision for exclusion or exemption of the compensation received by Mrs. Hoskins it must be included in petitioners' gross income, unless it is exempt upon constitutional grounds. It is compensation for personal services which the statute provides shall be included in gross income. The question is, Is it impliedly exempt under the Constitution?

Since the filing of the brief of the petitioners in this case the Supreme Court has rendered its decision in *Helvering* v. *Powers*, 293 U. S. 214. The question there was whether the salary of certain "public officers" of the State of Massachusetts who, pursuant to the laws of that state, were engaged in conducting the business of a street railway system under state control was constitutionally exempt from the imposition of a Federal income tax. In holding that Congress had the constitutional authority to lay the tax, the Court said:

While the undertaking is for the public benefit, it is still a particular business enterprise—the operation of a street railway—and the functions of the trustees are limited accordingly.

\*      \*      \*      \*      \*      \*      \*

We come then to the question whether the Congress has the constitutional power to impose an income tax upon the compensation of public officers of the

character here involved. We do not regard that question as answered by mere terminology. The roots of the constitutional restriction strike deeper than that. The term "public office" undoubtedly implies a definite assignment of public activity, fixed by appointment, tenure and duties. But whether that field of activity in relation to a State, carries immunity from federal taxation is a question which compels consideration of the nature of the activity, apart from the mere creation of offices for conducting it, and of the fundamental reason for denying federal authority to tax. That reason, as we have frequently said, is found in the necessary protection of the independence of the national and state governments within their respective spheres under our constitutional system. *Collector* v. *Day*, 11 Wall. 113, 125, 127; *Ambrosini* v. *United States*, 187 U. S. 1, 7; *Indian Motocycle Company* v. *United States*, 283 U. S. 570, 575. The principle of immunity thus has inherent limitations. *Metcalf & Eddy* v. *Mitchell*, supra, pp. 522–524; *Willcuts* v. *Bunn*, 282 U. S. 216, 225, 226; *Indian Motocycle Company* v. *United States*, supra, p. 576; *Fox Film Corporation* v. *Doyal*, 286 U. S. 123, 128; *Board of Trustees* v. *United States*, 289 U. S. 48, 59. And one of these limitations is that the State cannot withdraw sources of revenue from the federal taxing power by engaging in businesses which constitute a departure from usual governmental functions and to which, by reason of their nature, the federal taxing power would normally extend. The fact that the State has power to undertake such enterprises, and that they are undertaken for what the State conceives to be the public benefit, does not establish immunity. *South Carolina* v. *United States*, 199 U. S. 437; *Flint* v. *Stone Tracy Company*, 220 U. S. 107, 172; *Murray* v. *Wilson Distilling Company*, 213 U. S. 151, 173; *Metcalf & Eddy* v. *Mitchell*, supra; *Indian Motocycle Company* v. *United States*, supra; *Ohio* v. *Helvering*, 292 U. S. 360, 368, 369. The necessary protection of the independence of the state government is not deemed to go so far.

\* \* \* \* \* \* \*

The method which the State may adopt in organizing such an activity cannot be regarded as determinative. If the dealers in South Carolina, or those employed to operate the state stores in Ohio, had been denominated public officers, and as such had been assigned definite tenure and duties, the same result would have been reached, as the principle involved would be equally applicable. Nor, in such a case, would the fact that the officers were entrusted with the authority to fix prices for the sales under their charge in a manner appropriately to secure the revenue needed for the enterprise, or were charged with the duty of ascertaining the losses, which, if they occurred, were to be borne by general taxation, establish a material distinction. The nature of the enterprise, and not the particular incidents of its management, would control.

We see no reason for putting the operation of a street railway in a different category from the sale of liquors. In each case, the State, with its own conception of public advantage, is undertaking a business enterprise of a sort that is normally within the reach of the federal taxing power and is distinct from the usual governmental functions that are immune from federal taxation in order to safeguard the necessary independence of the State. If, in the instant case, the Commonwealth had acquired the property of the Company and had organized management of it in perpetuity by the state government, instead of temporarily, or had taken over all the street railways in all its cities for direct operation by the commonwealth, there would appear to be no ground, under the principles established by the decisions we have cited, for holding that this would effect the withdrawal of the enterprise from the federal taxing power. And the fact that the State has here undertaken public management and oper-

ation for a limited time, and under the particular restrictions of the agreement with the Company, cannot be said to furnish a ground for immunity.

If the business itself, by reason of its character, is not immune, although undertaken by the State, from a federal excise tax upon its operations, upon what ground can it be said that the compensation of those who conduct the enterprise for the State is exempt from a federal income tax? Their compensation, whether paid out of the returns from the business or otherwise, can have no quality, so far as the federal taxing power is concerned, superior to that of the enterprise in which the compensated service is rendered.

Although the salary of public officers of a state was involved in the foregoing case and in the instant case there is involved the compensation of an employee of a political subdivision of a state, the principle involved is the same and the decision there is, in our opinion, equally applicable here.

As indicated by the Court, the fact that a person is a public officer of a state does not standing alone make his compensation immune from Federal taxation, but that consideration must be given to the nature of the activity in which such person is engaged. If it be found that such activity is in the conduct of a business enterprise of a sort that is normally within reach of the Federal taxing power and is distinct from the usual governmental functions that are immune from Federal taxation where the state is acting in its sovereign capacity, then the compensation derived therefrom is not immune. And this is true notwithstanding the fact that the business enterprise is one that the state has the power to conduct and one which it conceives that it is conducting for the public benefit.

In the instant case a political subdivision of the State of Texas engaged in the operation of a number of cafeterias, employing in such activity Mrs. Hoskins and many others. Normally the income arising from the operation of cafeterias comes within the Federal taxing power. It is a business in competition with private industry as distinguished from a governmental sovereign function, and, while it was doubtless conducted in the public interest and for the public benefit, it is still a particular business enterprise in which the state or political subdivision thereof was engaged. Its operation constitutes a departure from the exercise of a usual sovereign function and is an activity distinct from the usual governmental functions which are immune from Federal taxation. The activity being one which is normally within the Federal taxing power, the compensation of those engaged in its promotion likewise is within that power. We therefore conclude that Congress had authority to lay the tax on the compensation of Mrs. Hoskins and that the respondent did not err in including it in her taxable income.

Reviewed by the Board.

*Judgment will be entered for the respondent.*