JOHN BROWN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77906.   Promulgated December 3, 1936.

*Charles M. Bryan, Esq.,* for the petitioner.
*W. R. Lansford, Esq.,* for the respondent.

112

OPINION.

MELLOTT: Petitioner contends that the compensation received by him is exempt from the Federal income tax under the rule, often enunciated by the courts, many times applied by this Board, and implicit in our dual system of government, that neither sovereign may tax the means or instrumentalities through which the other exercises usual, traditional, or essential governmental functions. For "the power to tax involves the power to destroy." *McCulloch* v. *Maryland*, 4 Wheat. 316; *Collector* v. *Day*, 11 Wall. 113; *Ambrosini* v. *United States*, 187 U. S. 1; *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514; *McCallen Co.* v. *Massachusetts*, 279 U. S. 620, 628; *Indian Motocycle Co.* v. *United States*, 283 U. S. 570; *Helvering* v. *Powers*, 293 U. S. 214.

Just what instrumentalities or agencies of a state are exempt from the Federal tax "cannot be stated in terms of universal application" but each case must be determined upon its own facts. *Register* v. *Commissioner*, 69 Fed. (2d) 607; *Burnet* v. *Livezey*, 48 Fed. (2d) 159. While it is true, as stated by petitioner upon brief, that courts do not attempt to limit or define the precise line of demarcation between those activities having some relation to government, "which are nevertheless subject to taxation, from those which are immune", *Metcalf & Eddy* v. *Mitchell, supra*, and while it is also true that the Treasury Department can not do so by regulation (*Helvering* v. *Powers, supra*), nevertheless the Supreme Court has held specifically that "one who is not an officer or employee of a state, does not establish exemption from Federal income tax merely by showing that his income was received as compensation for service rendered under a contract with the state."

Finding has been made that petitioner was not an officer. Such finding is a mixed finding of fact and conclusion of law, premised upon the failure of the petitioner to show that an office, as defined by the Supreme Court, embracing the idea of tenure, duration, emoluments, and duties fixed by law, had been created by legislative enactment of the State of Tennessee. The statutes merely authorize the county trustee to appoint an attorney to institute and prosecute suits for the collection of delinquent taxes or the foreclosure of the tax liens. While it is true that petitioner served for one year under each appointment, he was not appointed for any definite period. For aught that is contained in the law, the county trustee could have superseded him at any time, with or without cause. He took no oath of office and furnished no bond, neither being required. He was free to engage in other activities if he had seen fit to do so. These circumstances indicate, and seem to require the finding or conclusion, that he was not an officer.

Upon brief petitioner argues that he is—or was—an agency or instrumentality through which the state exercises one of its fundamental acts of sovereignty, the collection of taxes; that he was "a collector of state and county revenue", and "simply the third step in the collection of revenue." Manifestly he was not a true tax collector. He was charged with no taxes, handled no money, gave no bond, maintained no official records and filed no report. He was merely the "attorney chosen by the county trustee with the approval of the county judge" to institute and prosecute suits against delinquent taxpayers and to foreclose the tax liens. His activities were stated by him as follows: "I physically handle no money. I prepare the statement * * * which is in turn sent to the clerk of the chancery court, who receipts for the money shown by the statement. * * *

I issue the formal dismissal." These are activities of an attorney rather than of a collector of taxes. For such activities he was paid a fee, contingent upon the amount recovered—an arrangement quite commonly made between an attorney and his client.

In *R. E. L. Johnson*, 25 B. T. A. 359, the petitioner, an attorney employed as chief counsel under the back tax law of Arkansas to prosecute suits in the state courts for the collection of back taxes, claimed that his compensation was exempt from the Federal income tax. He, like petitioner, was permitted to occupy an office in a publicly owned building, in that case the Statehouse, and to use, without charge, clerical and stenographic assistants paid by the state. He was paid a commission out of the collections made, his appointment had no fixed term, he took no oath of office, gave no official bond, devoted his entire time to such work, engaged in no other law practice and had no other professional engagements or associations. It was held, following *Lucas* v. *Howard*, 280 U. S. 526; *Lucas* v. *Reed*, 281 U. S. 699; *Metcalf & Eddy* v. *Mitchell*, *supra; Mesce* v. *United States*, 64 Ct. Cls. 481; and *J. F. Roberts*, 13 B. T. A. 448; affd., 44 Fed. (2d) 168, that compensation so received was not exempt from the Federal income tax. A similar holding was made in *Harry D. Kremer*, 31 B. T. A. 566, where the taxpayer had been employed by the revenue agent of Kentucky, his compensation being paid out of the statutory fee allowed for making the collections.

It is apparent that petitioner was not an employee of the state or a political subdivision thereof. He had the "liberty of action" and freedom from detailed control or right of control possessed by an independent contractor but not by a mere employee. He was free to come and go as he pleased, to exercise his best professional skill and judgment in the preparation and prosecution of the bills in chancery, to select, employ, and discharge his own assistants, and to employ means and instrumentalities of his own selection for the completion of the task undertaken. These are *indicia* of an independent contractor and the conclusion is inescapable that such was the relationship between petitioner and the political subdivisions of the state. It follows that the compensation received by petitioner was income, taxable to him under the revenue acts in force when it was received.

There remains for consideration the question whether or not the penalty should be assessed. Upon brief petitioner states that "the imposition of a penalty upon him would be the punishment of an innocent person who has acted throughout in the utmost good faith." He testified that at one time he had discussed with the collector of internal revenue whether or not he was liable for the tax and quoted him as stating, in effect, that he had "never heard of anyone occupy-

ing your position" who ever paid the tax. He did not, however, ask for nor receive, an official ruling upon the subject.

The statute is specific—section 3176 of the Revised Statutes as amended by section 1003 of the Revenue Act of 1924 and by section 1103 of the Revenue Act of 1926, and section 291, Revenue Act of 1928; and inasmuch as the petitioner filed no return reporting the receipt of the income the penalty must be imposed. "It does not matter why he failed to file a return." *Harry D. Kremer, supra,* and cases cited; *Frederic C. Pitcher,* 31 B. T. A. 957; *Douglas L. Edmonds, Administrator,* 31 B. T. A. 962 (on appeal to the 9th Circuit); *Sarah A. W. Coursey,* 33 B. T. A. 1068.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

———

HILL, dissenting: Petitioner was appointed annually during a period of 10 years as attorney to file and prosecute suits for the collection of delinquent land taxes. He was appointed by the county trustee of Shelby County, Tennessee, with the approval of the chairman of the county court, pursuant to a statute enacted by the General Assembly of the State of Tennessee. The majority opinion holds that petitioner was neither an officer nor an employee of the state or of its political subdivisions, nor an instrumentality for the exercise of a governmental function, and concludes that his compensation received as such attorney is subject to the Federal income tax. The conclusion reached, I think, is erroneous.

In the majority opinion it is stated that "The statutes merely authorize the county trustee to appoint an attorney to institute and prosecute suits for the collection of delinquent taxes or the foreclosure of the tax liens." I am constrained to disagree with the correctness of this statement.

Section 1588 of Michie's Tennessee Code (1932) provides that, between the dates of February 1 and March 1 of each year, the county trustee *shall deliver* the delinquent lists showing all unpaid land taxes to an attorney chosen by him, with the approval of the county judge or chairman of the county court; and section 1598 provides that if the county trustee and county judge fail to employ an attorney *as required of them* by the statute, and within the time provided for the filing of suits, the Commissioner of Finance and Taxation *shall employ* an attorney and file such suits, and for such failure of the trustee and county judge or chairman, *they shall* pay to the State of Tennessee a penalty of 10 percent of all delinquent taxes shown by the delinquent lists in the office of the trustee. The appointment of the attorney appears, therefore, to be mandatory upon and not discretionary with the county trustee.

Petitioner does not contend that he was an "officer" and the record establishes, in my opinion, that he was not. The statute created no "office" of attorney, and petitioner took no oath of office, nor gave any bond. But the question whether petitioner was an "employee" presents a more perplexing problem.

Petitioner had very limited, if any, independence of control in the mode, manner, and means of carrying on his work, which is said to differentiate the independent contractor from an employee or servant. *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514; *Mesce* v. *United States*, 64 Ct. Cls. 481. He was appointed pursuant to statutory authority, and the character and extent of his duties were specified by the statute, as well as to a very large extent the mode and manner of performing his duties. He was required to file all suits between February 1 and March 1 of each year; the form of action and the court in which it should be brought were specified; he was required to file against all delinquents, even though in some cases the amount involved was not more than 25 cents; he could not dismiss any action or settle with the taxpayer for less than the full amount of tax, penalty and interest shown by the delinquent lists, except when specially authorized by the state and county officials to do so. Even petitioner's compensation was subject to regulation by the state legislature without his consent, and it was in fact so changed several times. His functions could be and were suspended by the legislature on occasion. He did not operate under a contract, but by virtue of appointment, and his functions involved matters in which the public was directly interested. He did not select and furnish his own office at his own expense, nor pay the salaries of his assistants, except only to the minor and incidental extent of typing the bills filed in court. He was not free to use his own efforts and instrumentalities and do the work as his judgment dictated. *Mesce* v. *United State, supra.*

On the other hand, petitioner was furnished an office in the county court house designated "Delinquent Tax Office." All furniture and supplies, printed forms and regularly employed assistants were furnished and paid for by the county. He was the head of the office, and the clerks furnished by the county worked under his direction. He devoted his full time to the performance of his duties. He was appointed annually, the tenure under each appointment being for one year.

All of these are qualifications of an "employee", and in my opinion, taken together, serve to bring petitioner well within such classification and exempt his compensation from the Federal tax.

However, in addition to the status of the petitioner as an employee, I am impelled for another reason and on a different ground to reach the same conclusion respecting the exemption from taxation of his compensation. The record establishes, in my opinion, that he was

an integral and essential part of the machinery or agency set up by the state legislature for the collection of delinquent taxes.

It is now settled law that the income of even an independent contractor is immune to Federal taxation where such income arises out of an instrumentality through which a state immediately and directly exercises its sovereign power. *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393; *Indian Motocycle Co.* v. *United States*, 283 U. S. 570.

In *Metcalf & Eddy* v. *Mitchell, supra,* the Supreme Court stated this principle as follows:

* * * this court has repeatedly held that those agencies through which either government immediately and directly exercises its sovereign powers, are immune from the taxing power of the other. Thus the employment of officers who are agents to administer its laws * * * its obligations sold to raise public funds * * * its investments of public funds in the securities of private corporations, for public purposes * * * surety bonds exacted by it in the exercise of its police power * * * are all so intimately connected with the necessary functions of government, as to fall within the established exemption; and when the instrumentality is of that character, the immunity extends not only to the instrumentality itself but to income derived from it * * *.

The General Assembly of the State of Tennessee, by the statutes hereinabove referred to, created a definite plan for the collection of taxes and provided therein the machinery for the operation of such plan. It consisted of three separate and distinct steps or divisions.

First, the county trustee was charged with the collection of taxes until they become delinquent.

Second, within 30 days after the taxes became delinquent, it was the duty of the county trustee to prepare delinquent lists and deliver to deputy trustees, sheriffs, or constables appointed by him, who, in turn, were charged with the collection of such taxes by distress and sale of personal property until the first day of the following January, when the lists of any taxes then remaining uncollected were returned by the officers to the county trustee.

Third, the county trustee was then required *under penalty* to deliver the lists to an attorney selected and appointed by him, with the approval of the county judge or chairman of the county court, to file suits for the collection of all delinquent land taxes. After the filing of suits the county trustee was relieved of all responsibility and had no further connection with the collection of the taxes. From that time on, petitioner was the sole agency or instrumentality through which the taxes could be collected.

Certainly, the chancery court, in which the suits were filed, could not properly be called a tax collecting agency. It could take no initiative in the filing and prosecution of suits; its function was that of a judicial tribunal. Nor was the clerk of the court, to whom the

taxes were paid as a result of suits instituted by petitioner, a *collector* of taxes. It was not his duty to take any steps to file or prosecute suits or otherwise enforce collection. He merely received the money and administered the general fund into which it was paid, as a result of the activities carried on by the petitioner. It was through the efforts of the petitioner and petitioner alone that collection of the taxes was enforced. After the suits were filed there was no other officer, agent or instrumentality provided by the legislature whose business or duty it was to take any action to enforce collection of delinquent taxes. The county trustee could not even receive the money and give a valid receipt therefor, if payment of the taxes had been tendered at his office.

From these considerations, I can not escape the conclusion that petitioner was an indispensible part of the machinery created and set up by the state legislature for the collection of taxes, and the sole agency for collection of delinquent land taxes by suit; and being an essential part of the "instrumentalities, means and operations" whereby the State exercised a governmental power appropriately belonging to it, his compensation is exempt from taxation by the United States.

The majority opinion cites and relies, among others, upon the decision in *R. E. L. Johnson*, 25 B. T. A. 359, which in turn cited *J. F. Roberts*, 13 B. T. A. 438, affd., 44 Fed. (2d) 168. All of the cases so cited are, in my opinion, clearly distinguishable on principle from the instant case.

Johnson was employed under the provisions of the so-called back tax law of Arkansas *to assist* the attorney general in connection with the filing of suits for the collection of certain delinquent corporation taxes. The primary duty devolved upon the attorney general, and the statute provided only that "the Governor is authorized to employ any attorneys that may be necessary to assist the Attorney General in such suits." It seems plain to me that attorneys so appointed did not constitute the exclusive machinery or agency set up by the legislature for the collection of delinquent taxes. Appointment was not required but merely authorized *when necessary*. Such attorneys were merely incidental when appointed, and were not an integral or essential part of the tax collecting instrumentality. If such attorneys were not appointed, there still remained responsible officers or agencies for the collection of the taxes.

Roberts was appointed pursuant to an act of the Legislature of the State of Georgia, which authorized the state tax commissioner, under certain specified conditions, to employ "competent men" to investigate tax matters in the several counties of the state, with a view *to assisting* the local authorities in securing proper returns of ad valorem taxes. Here again the appointee was not an essential

part of the tax collecting agency, but merely incidental or supplemental. He was not only *not* an integral part of the tax collecting machinery, but his appointment was authorized only under certain special circumstances.

On the first issue, the decision, in my opinion, should be for the petitioner. On the second issue, it would follow that, since there is no taxable income, no penalties are due for failure to file returns.

TYSON agrees with this dissent.