## STERLING v. UNITED STATES.
### No. 6204.

District Court, D. Maryland.
Feb. 20, 1939.

William L. Marbury, Jr., and Julian de Bruyn-Kops, Jr., both of Baltimore, Md., for petitioner.

G. Randolph Aiken, Asst. U. S. Atty., of Baltimore, Md., and Edward F McMahon, Asst. Atty. Gen., for the United States.

WILLIAM C. COLEMAN, District Judge.

This is a suit for recovery of taxes paid under protest by the plaintiff in the form of documentary stamps, alleged by the Government to be due pursuant to the provisions of Schedule A (1), Title 8 (section 800 et seq.), of the Revenue Act of February 26th, 1926, 44 Stat. 101, as amended by Section 721 of the Revenue Act of 1932, and Resolution of June 28, 1935, Chapter 333, 49 Stat. 431, 26 U.S.C.A. § 901, by reason of the issue by the Title Mortgage & Management Company, to depositors of the Title Guarantee & Trust Company, of which the plaintiff is receiver, of certain certificates of beneficial interest. Claim for refund of the amount of the stamps required to be affixed to these certificates was duly filed by the plaintiff with the Collector of Internal Revenue at Baltimore, but was rejected, and the filing of the present suit for refund followed.

The material facts upon which the Government bases its right to require the documentary stamp tax in question have been stipulated by the parties and are as follows.

On February 25th, 1933, the Title Guarantee & Trust Company, a Maryland corporation, engaged in the general banking

business in Baltimore, a substantial portion of which consisted in receiving deposits and making loans and discounts, became insolvent; a receiver for it was appointed by Circuit Court No. 2 of Baltimore City, and on December 6th, 1935, the present plaintiff, Warren F. Sterling, was appointed receiver to succeed the one originally appointed on February 25th, 1933.

On October 17th, 1934, a plan of reorganization of the Title Guarantee & Trust Company was approved by the then receiver who was then also acting Bank Commissioner of the State of Maryland, and this plan was approved by the Circuit Court No. 2 of Baltimore City on May 7th, 1935. Pursuant to this plan, there was organized on February 28th, 1934, another Maryland corporation known as the Title Mortgage and Management Company, to hold, for the benefit of the depositors of the company in reorganization under the receivership, all of the latter's assets except those transferred to the reorganized Title Guarantee & Trust Company; and to borrow on such assets from the Reconstruction Finance Corporation, and in turn, to liquidate such assets over a period of years for the benefit of depositors of the old Title Guarantee & Trust Company. As a result of this arrangement, the receiver made a distribution in cash to such depositors equal to 30% of their deposits, and certificates of beneficial interest were issued by the Title Mortgage & Management Company to these depositors for the remaining 70% of their deposits, such certificates totaling in face amount $2,207,510.18. It was upon these certificates that the receiver, on June 23rd, 1936, paid the taxes here in controversy which had been assessed by the Collector of Internal Revenue at Baltimore against the Title Mortgage and Management Company, represented by documentary stamps alleged to be due by reason of the issuance of these certificates between March 9th, 1936 and April 16th, 1936.

It is claimed by the plaintiff, the receiver, that while the payment of the tax in the form of the documentary stamps was made for the Title Mortgage & Management Company which issued the certificates of beneficial interest, the tax was paid by the plaintiff as receiver of the insolvent Title Guarantee & Trust Company, out of the funds held by him for its depositors, and that since such payment has thereby diminished the assets of that insolvent bank, all of which are necessary for the full payment of its depositors, this tax (1) did not accrue under the provisions of Schedule A (1), Title 8 of the Revenue Act of 1926, amended as above mentioned; and (2) may not be lawfully collected under the provisions of Section 22 of the Act of March 1st, 1879 as amended by the Revenue Act of May 28th, 1938, Chapter 289, Section 818, 52 Stat. 579, 12 U.S.C.A. § 570.

On the other hand, the Government contends that although plaintiff, the receiver of the Title Guarantee & Trust Company, paid the tax, the liability was that of the new company, the Title Mortgage & Management Company, since it issued the certificates of beneficial interest, which constitute a direct lien on all of the assets of that company; and that further, that company not being a bank, is not entitled to the exemption provisions of the statute last referred to.

For a proper understanding of the questions presented, the text of the two statutes involved should be quoted. They read as follows: Schedule A (1), Title 8 of the Revenue Act of 1926. "Bonds of indebtedness: On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities on each $100 of face value or fraction thereof, 5 cents: Provided, That every renewal of the foregoing shall be taxed as a new issue: Provided further, That when a bond conditioned for the repayment or payment of money is given in a penal sum greater than the debt secured, the tax shall be based upon the amount secured."

Section 721 of the Revenue Act of June 6th, 1932, increased the tax from five cents to ten cents, but further provided that effective July 1st, 1934, the five cent tax should be restored, which rate, by subsequent enactments, has been continued in effect up to the present time, the asserted authority for requiring the tax in suit being the Resolution of June 28th, 1935, Chapter 333, 49 Stat. 431. The Act of March 1st, 1879, as amended by the Act of May 28th, 1938, Chapter 289, Section 818, 52 Stat. 579, 12 U.S.C.A. § 570, is as follows:

"(a) Whenever and after any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has ceased to do business by reason of in-

solvency or bankruptcy, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, which shall diminish the assets thereof necessary for the full payment of all its depositors; and such tax shall be abated from such national banks as are found by the Comptroller of the Currency to be insolvent; and the Commissioner of Internal Revenue, when the facts shall appear to him, is authorized to remit so much of the said tax against any such insolvent banks and trust companies organized under State law as shall be found to affect the claims of their depositors.

"(b) Whenever any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has been released or discharged from its liability to its depositors for any part of their claims against it, and such depositors have accepted, in lieu thereof, a lien upon subsequent earnings of such bank or trust company, or claims against assets segregated by such bank or trust company or against assets transferred from it to an individual or corporate trustee or agent, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, such individual or corporate trustee or such agent, which shall diminish the assets thereof which are available for the payment of such depositor claims and which are necessary for the full payment thereof.

' "(c) Any such tax so collected shall be deemed to be erroneously collected, and shall be refunded subject to all provisions and limitations of law, so far as applicable, relating to the refunding of taxes, but tax so abated or, refunded after the date of the enactment of the Revenue Act of 1938 shall be reassessed whenever it shall appear that payment of the tax will not diminish the assets as aforesaid. The running of the statute of limitations on the making of assessment and collection shall be suspended during, and for ninety days beyond, the period for which, pursuant to this section, assessment or collection may not be made, and a tax which has been abated may be reassessed and collected during the time within which, had there been no abatement, collection might have been made.

"(d) This section shall not apply to any tax imposed by the Social Security Act." ..

Before the amendment, the Act had not specifically mentioned trust companies. Also, subsections (b), (c) and (d) are entirely new.

While it is suggested that if the provisions of Schedule A (1), Title 8 of the Revenue Act of 1926 as amended, stood alone, the certificates of beneficial interest here involved would be subject to the stamp tax thereby imposed,—a question which we do not decide because not presented in this case,—we conclude that the plaintiff's contention is correct to the effect that the provisions of Section 22 of the Act of March 1st, 1879, as amended by the Act of May 28th, 1938 expressly exempt these certificates from such tax. Subsection (b) of the latter statute embraces precisely the present situation because we have here (1) a trust company, that is the original Title Guarantee & Trust Company; (2) a substantial portion of whose business consisted in receiving deposits and making loans and discounts; (3) whose depositors have accepted in lieu of part of its liability to them, claims against assets transferred from it to a corporate trustee, namely, the Title Mortgage & Management Company; and (4) the tax as assessed and collected has, in fact, diminished the assets of the Title Guarantee & Trust Company, held by its corporate trustee, the Title Mortgage & Management Company, available for the payment of the claims of depositors of the former and which are necessary for the full payment thereof.

We find no merit in the contention of the Government that, although the present plaintiff, the receiver of the Title Guarantee & Trust Company, actually paid the tax, the liability for it being that of the new company, the Title Mortgage & Management Company, the exemption in subsection (b) of the statute as just analyzed does not apply. On the contrary, it clearly does apply by the precise phraseology employed, for it expressly contemplates and provides for the use of another company as a transferee of the insolvent bank or trust company's assets in aid of the plan of liquidation. Likewise, we find no merit in the additional contention of the Government that since the Title Mortgage & Management Company is not a bank, it is not entitled to the exemption. If it were acting for itself, it might not be, but it was acting merely as a trustee for the assets of the insolvent company and in such a case, the statute expressly prohibits the as-

sessment or collection of the tax "on account of such bank, or trust company, such individual or corporate trustee or such agent, which shall diminish the assets thereof which are available for the payment of such depositor claims and which are necessary for the full payment thereof." That is to say, from whatever angle viewed, the obvious, clearly expressed exemption is made available to both the trustee and the cestui trust, provided the assessment and collection of the tax would diminish the assets in the hands of the trustee available and necessary for the satisfaction of the claims of the former's creditors.

Also, we are satisfied that the amendment of May 28th, 1938, is intended to be retroactive. Such is the reasonable interpretation of the words employed. The statute has already been quoted and a mere reading of it refutes any contention to the contrary. See Johnston v. U. S., 17 Ct.Cl. 157, 170.

It is permissible to consult reports of Congressional Committees and explanations given on the floor of the Senate and House by those in charge of a particular measure, as legitimate aids to the interpretation of a statute if its language is doubtful or obscure. Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke, 300 U. S. 440, 463, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455 and cases cited. But we find no ambiguity as to the intention of the statute here involved. It may be added that there is available the report of the Conference Committee Managers on the part of the House of Representatives, dated May 11th, 1938, and an examination of that part of this report which deals with the amendments to Section 22 of the Act of March 1st, 1879 with which we are here directly concerned, is but a restatement of the terms of the amendments.

Counsel for the Government have referred us to Treasury Department Regulations 71 relating to stamp taxes on issues and transfers of various types of securities under Schedule A (1), Title 8 of the Revenue Act of 1926 as amended, in an effort to show that such Regulations have consistently approved and provided for the assessment and collection of the tax here in controversy. However, we find nothing in these Regulations to support this contention. On the contrary, articles 18 and 19 of these Regulations would seem to refute it. The former provides that "Any instrument which is actually a certificate of deposit issued by a bank is not subject to the stamp tax, regardless of whether it is negotiable or non-negotiable or whether it is payable on demand or at some specified time"; and the latter provides that "The term 'certificates of indebtedness' "—which clearly the present certificates are,—"includes only instruments having the general character of investment securities issued by a corporation as distinguished from instruments evidencing debts arising in ordinary transactions between individuals." Nor have we been referred to a single instance with similar facts where the tax has been imposed and upheld by court decision. But in any event, even where the terms of a statute have been given an established construction and application by administrative officials, the rule that such will ordinarily not be disturbed, falls in the face of a situation which does not permit of its application without destroying the common sense meaning of the particular language. Rector, etc., of Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249.

It follows, therefore, that the plaintiff is entitled to a judgment against the defendant for $2,443.10, with interest in accordance with the provisions of Section 1671 of Title 26 U.S.C.A.