CONSOLIDATED GAS ELECTRIC LIGHT & POWER CO. OF BALTIMORE v. UNITED STATES.

No. 6464.

District Court, D. Maryland.

April 8, 1939.

Clyde T. Warren and William Baxter, both of Baltimore, Md., for petitioner.

G. Randolph Aiken, Asst. U. S. Atty., of Baltimore, Md., and Stephen J. Angland, Sp. Asst. to Atty. Gen., for the United States.

WILLIAM C. COLEMAN, District Judge.

This is a suit for recovery of taxes, paid under protest by the plaintiff, in the form of documentary stamps alleged by the Government to be due pursuant to schedule A(9), section 800 et seq., of the Revenue Act of February 26th, 1926, as amended by section 724(a) of the Revenue Act of June 6th, 1932, 26 U.S.C.A. § 900 note.

The pertinent part of this schedule is as follows: "9. Bonds, etc., sales or transfers: On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the instruments mentioned or described in subdivision 1 and of a kind the issue of which is taxable thereunder, whether made by any assignment in blank or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such instrument or not), on each $100 of face value or fraction thereof, 4 cents: * * *." The pertinent part of subdivision 1, Schedule A of the Revenue Act of June 6th, 1932, section 721(a), referred to above, is as follows: "On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities on each $100 of face value or fraction thereof, 10 cents * * *." See 26 U.S. C.A. §§ 900, 901.

The material facts upon which the Government bases its right to require the docu-mentary stamp tax have been stipulated by the parties and are summarized as follows: The plaintiff, a public utility company, incorporated in Maryland with its principal office and place of business in Baltimore, was accustomed to keep on deposit large sums of money in various banks in that city, among them, the Baltimore Trust Company. The so called "Bank Holiday," which had been effective in Maryland since February 25th, 1933, by proclamation of the Governor of the State, and since March 4th by proclamation of the President of the United States, ended on March 14th, 1933, and at that time the plaintiff had on deposit with the Baltimore Trust Company the sum of $1,201,499.62. This bank did not then reopen, but, pursuant to the provisions of the so called Emergency Banking Act (Chapter 46 of the Acts of the General Assembly of Maryland 1933), it remained under the custody and control of the State Bank Commissioner who, in due course, determined it to be insolvent and to have been insolvent on February 25th, 1933, when it was closed, with the result that all of its assets, together with the full statutory double liability of all of its stockholders, were insufficient to pay its depositors in full, this finding being subsequently substantiated by decree of the Circuit Court No. 2 of Baltimore City.

On March 21st, 1933, the Baltimore Trust Company reopened on a restricted basis. 5% of all funds on deposit were made immediately available to depositors in cash, and so called "certificates of indebtedness" were issued by the trust company for the balance of the restricted deposits, pursuant to a plan for its reorganization which was adopted on July 12th, 1933, and became effective on August 4th, 1933, in conformity with the aforementioned Maryland Emergency Banking Act. These certificates were registered and assignable. The certificate received by the plaintiff company was in the face amount of $1,031,904.48. Pursuant to the procedure for liquidation provided for in the plan of reorganization, the trust company began liquidating its assets, and from amounts thus realized, on February 13th, 1934, made a distribution on its certificates of indebtedness, the present plaintiff receiving in this distribution $206,380.90, thus reducing the face amount of its certificate to $825,523.58. On November 12th, 1935, the plaintiff sold and assigned this certificate to another company, the Federal Water Service Corporation, for the sum

of $257,976.12. No revenue stamps were affixed to this certificate, nor to any papers in connection with this transfer. The Commissioner of Internal Revenue made an assessment against the plaintiff in the amount of $330.24, representing stamp taxes alleged to be due on this transfer. On March 17th, 1938, the plaintiff paid this assessment under protest, and on the same date filed its claim for refund, on the ground that the assessment was erroneously and illegally collected in that (1) the certificate is actually a "certificate of deposit" issued by a bank, and under Article 18 of Regulation 71 of the Treasury Department is not subject to the stamp tax; (2) the certificate is not within the definition of "certificates of indebtedness" contained in Article 19 of Regulation 71 of the Treasury Department, in which the term is defined as including "only instruments having the general character of investment securities * * *;" and (3) Schedule A(9) section 800 of the Revenue Act of 1926, as amended by Section 724(a) of the Revenue Act of June 6th, 1932, under which the tax on the certificate was assessed, is specifically limited in its application to instruments "of a kind the issue of which is taxable" under Schedule A(1) of that Act; and since this certificate was issued by an insolvent bank, and by reason of Section 22 of the Act of March 1st, 1879, 12 U.S.C.A. § 570, such issuance was therefore not subject to the tax imposed by Schedule A(1), the transfer of the certificate is also not subject to the tax.

On May 13th, 1938, the plaintiff's claim for refund was rejected by the Commissioner on the ground that the certificate having been issued by a corporation; being of the form and general appearance of an investment security; providing not only for the payment of a definite principal sum in full, but also interest at a specified rate, and being in registered form characteristic of corporate securities, it was, therefore, not a "certificate of deposit" in the commonly accepted meaning of that term; that, therefore, it fell within the class of instruments taxable on issuance under Schedule A(1) of the Act of 1932, and that consequently the subsequent transfer incurred the tax imposed by Schedule A(9).

Following the issuance of these certificates of indebtedness by the trust company, the Commissioner had made an assessment against the trust company, in the form of stamp taxes, alleged to be due upon such issuance, pursuant to Schedule A-1 of the Act. On March 17th, 1934, the trust company paid this tax, but on November 9th, 1936, filed a claim for refund on the ground, among others, that the tax had been erroneously and illegally collected, since the issuance of these certificates was exempt from the tax under Section 22 of the Act of March 1st, 1879, 12 U.S.C.A. § 570. On March 29th, 1937, the Commissioner on this ground agreed to, and did refund this tax.

It will thus be seen that the position now taken by the Government with respect to the taxes which have not been refunded and which are the subject of the present suit, is that the present question is entirely different from that involved in the taxation of the *issuance* as opposed to the *transfer,* of the certificates; and that exemption of the issuance of the certificates from taxation is due directly and solely to the provisions of a separate Act, namely, the Act of March 1st, 1879, which has application only to insolvent banks and trust companies themselves, and not to their depositors, in situations where imposition of the tax would diminish their assets necessary for full payment of depositors.

In the case of Sterling v. United States, 26 F.Supp. 488, this Court recently had occasion to construe the effect of the Act of March 1st, 1879, as amended by the Revenue Act of May 28th, 1938, 12 U.S. C.A. § 570, in its relation to the provisions of Schedule A(1), Title 8 of the Revenue Act of June 6th, 1932, already quoted; in other words, to determine the right of the Government to tax the *issuance* of certificates of indebtedness. In that case, the certificates were designated as "certificates of beneficial interest," and had been issued by another trust company, a substantial portion of whose business consisted in receiving deposits and making loans and discounts, and whose depositors had accepted, in lieu of part of its liability to them, claims against assets transferred from it to a corporate trustee. The tax as assessed and collected did, in fact, diminish the assets of the trust company, held by such corporate trustee available for the payment of the claims of depositors of the former, and which were necessary for the full payment thereof. Therefore, this Court held that the provisions of Section 22 of the Act of March 1st, 1879, as amended by the Act of May 28th, 1938, 12 U.S.C.A. § 570, expressly exempted these certificates from the tax imposed by Sec-

tion 721 of the Revenue Act of 1932, and Resolution of June 28th, 1935, Chapter 333, 49 Stat. 431.

In the course of its opinion this Court referred to the suggestion that if the provisions of Schedule A(1) of Title 8 of the Revenue Act of 1932 stood alone, the certificates of beneficial interest would be subject to the stamp tax thereby imposed, but this Court refused to decide this question because not presented in that case. In the present case, however, we are faced with the necessity of deciding a parallel question; that is to say, the Act of March 1st, 1879, provides for exemption or remission of the tax liability of the bank or trust company itself, and, by the 1938 amendment, of its individual or corporate trustee acting on its behalf, and admittedly does not apply to a situation such as the present one, where the liability, if any, for the tax is that of a depositor of the bank or trust company, not of the bank or trust company itself.

The gist of the Government's contention appears to be that since the certificates here involved are of a kind, the issue of which would be taxable to the banking institution under Schedule A(1) of the Act of 1932 were it not for the remedial provisions of the Act of 1879 as amended; and that since there is no express provision in either of these acts purporting to aid directly creditors or depositors of insolvent banking institutions, but merely such institutions themselves, therefore, Schedule A(9) of the Act of 1932 when read in the light of Schedule A(1) of that Act must be given a liberal construction; in other words, that once it is found that the instrument in question is of a kind described in Schedule A(1) of the Act of 1932, we need go no further.

While prima facie a plausible argument, it is not tenable, because it strains the real meaning of the law. In the first place, it is to be noted that Schedule A(1) provides for taxation of enumerated evidences of indebtedness, "however termed, issued by any corporation with interest coupons or in registered form, *known generally as corporate securities * * *.*" (Italics inserted.) On this point alone, I feel that a decision in favor of the plaintiff might be rested, because certainly these certificates of indebtedness in the present case are not such as are *known generally as corporate securities*. They are evidences of debt pursuant to a plan of reorganization, and their basic purpose, when placed in the hands of depositors, is to pay the latter, as far as possible, what is due them. I think, therefore, we must look behind the exact labeling of these instruments and see what they really purport to do. Even after issuance, with the same provisions, to non-depositors of the insolvent bank, that is to say, to its general creditors, if the plan provided they should be, the transfer of these certificates to third parties would appear to be equally tax-exempt because, in such a situation, these certificates could not be said to be of a kind "known generally as corporate securities." The acceptance of these certificates by both depositor and general creditor was in essence compulsory. None of them considered that he was making an "investment." He did not expect to derive any income or profit therefrom. He knew that in all likelihood, he must sustain a loss and he has in fact done so, up to the present time.

While it is true that the decision of the Internal Revenue Department, with respect to the abatement of the tax on the *issuance* of these certificates of indebtedness, does not estop it from claiming that a different situation is presented when their subsequent transfer occurs, we feel that when the entire situation is viewed in the light of the construction which we believe is the reasonably proper one to put upon the law, the same result must be reached.

There is another point which supports the view now adopted, namely, that the Department itself appears, by its rulings, to have actually adopted this construction. In the Department's Regulation 71, revised July 1932, Article 18 provides: "Certificates of Deposit. Any instrument that is actually a certificate of deposit used by a bank is not subject to the stamp tax, regardless of whether it is negotiable or non-negotiable, and whether it is payable on demand or at some specified time." In addition, Article 19 provides: "Certificates of Indebtedness. The term 'certificate of indebtedness' includes only instruments having the general character of investment securities issued by a corporation as distinguished from instruments evidencing debts arising in ordinary transactions between individuals." It is a mere fiction to say that the purpose of the Act of March 1st, 1879, was to relieve the bank itself of the burden of the tax, but not necessarily the depositor, when, obviously,

the latter was the intended beneficiary of this remedial legislation, and not the bank as a mere impersonal entity. And so the Bureau of Internal Revenue has itself held in cases where stocks, bonds or real property have been transferred by an insolvent bank. In its Cumulative Bulletin, 1932, Vol. XI-2, page 541 (S.T. 547), the Bureau said, page 542: "The conclusion has been reached that the taxes in question, although imposed on the transferee as well as the transferor, and on the grantee as well as the grantor, are without application where the transferor or grantor is relieved from liability therefor by section 22 of the Act of March 1, 1879. This conclusion is based on the view that the statutory provision referred to is remedial in character and is to be liberally construed. Its manifest purpose is to relieve depositors from the burden of the tax. To tax the transferee or grantee in such case would be in effect, through the shifting of the burden of the tax to the transferor or grantor, to tax the insolvent bank and thus defeat the purpose of the statute."

Thus, these Regulations indicate that the Department itself has felt that the Congress was not seeking to tax either the issuance or transfer of instruments which were merely evidence of an effort on the part of insolvent banking institutions to liquidate their obligations to their depositors.

■ While it is true that Reports of the Senate and House of Representatives, during the consideration of this legislation prior to enactment, indicate that the words "of a kind the issue of which is taxable thereunder" contained in Schedule A(9) were inserted as an amendment for the express purpose of removing any possible doubt that Federal, State and municipal bonds, being exempt from the tax on issuance, would receive like exemption from the transfer tax (see Report No. 665, Senate Finance Committee, and Conference Report to the House, No. 1492, 72nd Congress, 1st Session, p. 47; and 26, respectively), the application of such exemption not being expressly so limited, there is no reason for so limiting it by implication. It is also pertinent to point out that exemption of Federal, State and municipal bonds itself rests, fundamentally, upon judicial interpretation, rather than upon any express Constitutional or statutory provision. Also, taxing statutes are to be construed in case of doubt, in favor of the tax-payer. Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211; Bowers v. New York & Albany Lighterage Co., 273 U.S. 346, 47 S.Ct. 389, 71 L.Ed. 676; McFeely v. Commissioner, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. 83, 101 A.L.R. 304.

■ In our earlier decision in Sterling v. United States, supra [26 F.Supp. 491], we stated that we had not been "referred to a single instance with similar facts where the tax has been imposed and upheld by court decision. But in any event, even where the terms of a statute have been given an established construction and application by administrative officials, the rule that such will ordinarily not be disturbed, falls in the face of a situation which does not permit of its application without destroying the common sense meaning of the particular language. Rector, etc. of Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L. Ed. 226. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249." This statement is equally applicable to the present state of facts.

It follows, therefore, that the plaintiff is entitled to a judgment for $330.24, with interest, in accordance with the provisions of Section 1671 of Title 26 U.S.C.A.