## UNITED STATES v. STERLING.
### No. 4470.

Circuit Court of Appeals, Fourth Circuit.
Aug. 28, 1939.

Louise Foster, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., of Baltimore, Md., on the brief), for the United States.

William L. Marbury, Jr., and Julian De Bruyn Kops, Jr., both of Baltimore, Md. (Marbury, Gosnell & Williams, of Baltimore, Md., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and HENRY H. WATKINS, District Judge.

SOPER, Circuit Judge.

This suit was brought by Warren F. Sterling, Receiver for the Title Guarantee & Trust Company, a Maryland corporation engaged in the general banking business in Baltimore, to recover a tax amounting to $2443.10, paid under protest in the form of documentary stamps, alleged by the Government to be due pursuant to the provisions of Schedule A (1) Title VIII of the Revenue Act of February 26, 1926, as amended by Section 721 (c) of the Revenue Act of 1932, 26 U.S.C.A. § 901.[1]  The stipulat-

---

[1] "§ 901.  Corporate securities

"On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities on each $100 of face value or fraction thereof, 10 cents until July 1, 1934, and 5 cents thereafter."

ed facts pertaining to the assessment and collection of the tax are substantially as follows:

On February 25, 1933, the Title Guarantee & Trust Company became insolvent and a receiver was appointed by the Circuit Court of Baltimore City. Later a plan of reorganization was adopted and approved by the receiver and the court. Pursuant to this plan, a part of the assets of the insolvent corporation were turned over to a new Title Guarantee and Trust Company, and there was organized another Maryland corporation, known as the Title Mortgage & Management Company to hold the other part of the assets of the old Title Guarantee & Trust Company and to liquidate the same over a period of years for the benefit of the depositors of the old company. As a result of this arrangement, the receiver made a distribution in cash to the depositors of the old company equal to 30% of their deposits, and the Title Mortgage and Management Company issued to these depositors certificates of beneficial interest for the remaining 70% of their deposits, such certificates totaling $2,207,510.18 in face amount. It was upon these certificates that the Collector of Internal Revenue assessed the tax here in controversy against the Title Mortgage & Management Company. The tax was paid on June 23, 1936 by the plaintiff as receiver for the Title Guarantee & Trust Company because the reorganization plan provided that the costs of reorganization should be paid out of certain funds then in the hands of the receiver, and the parties concerned and the Circuit Court of Baltimore City considered the tax to be such a cost. From a judgment of the District Court granting a refund, the government appeals, 26 F.Supp. 488.

■ The statute taxes "all bonds, debentures, or certificates of indebtedness issued by any corporation" and in addition thereto, "all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities". The plaintiff contends that the certificates issued by the Title Mortgage & Management Company are not within the phrase "certificates of indebtedness" as used in the statute because they were not of the type "known generally as corporate securities" and were not investment securities. In 1918 the Commissioner construed the Act as taxing "any instrument acknowledging liability for the payment of money". Treas. Dec. 2713. But the Solicitor of the Treasury in Law Opinion No. 909, reported in 1 Sales Tax Rulings Cumulative Bulletin 85 (1920) held that the definition of the Commissioner was too broad and that only instruments having the general character of investment securities were intended to be taxed. The Treasury Regulations have adopted this construction. Article 19 of Reg. 71 as revised in 1932, provides: "Certificates of Indebtedness. The term 'certificates of indebtedness' includes only instruments having the general character of investment securities issued by a corporation as distinguished from instruments evidencing debts arising in ordinary transactions between individuals". See also Reg. 55 (1922) Article 13; Reg. 55 (1924) Article 19. Whether or not the certificates of beneficial interest issued by the receiver in this case were within the terms of section 901, title 26 U.S.C.A., when properly construed, we need not decide, for we are of the opinion that the instruments were exempted from taxation by section 22 of the Revenue Act of 1879, 20 Stat. 351, as amended by section 818 of the Revenue Act of 1938, 12 U.S.C.A. § 570,[2] section 3798 of the Internal Revenue Code, 26 U.S.C.A. § 3798.

[2] "(a) Whenever and after any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has ceased to do business by reason of insolvency or bankruptcy, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, which shall diminish the assets thereof necessary for the full payment of all its depositors; and such tax shall be abated from such national banks as are found by the Comptroller of the Currency to be insolvent; and the Commissioner of Internal Revenue, when the facts shall appear to him, is authorized to remit so much of the said tax against any such insolvent banks and trust companies organized under State law as shall be found to affect the claims of their depositors.

"(b) Whenever any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has been released or discharged from its liability to its depositors for any part of their claims against it, and such depositors have accepted, in lieu thereof, a lien upon subsequent earnings of such bank or trust company, or claims against assets segregated by such bank or trust

The Government argues that the exemption of the Act of 1938 does not apply because the Title Mortgage & Management Company is not an insolvent bank and the tax will not reduce the assets of an insolvent bank necessary to pay its depositors, and because the tax was paid before the effective date of the Act. Any doubt that there might be on these questions is dispelled by section 406 of the Revenue Act of 1939, 26 U.S.C.A. § 3798(c),[3] which amends section 818 of the Revenue Act of 1938. The 1939 Act expressly provides that the exemption of the 1938 Act shall apply to a tax, whether collected before, on, or after the date of the enactment of the Revenue Act of 1938, and that when depositors of an insolvent bank have accepted in lieu of their claims against it, claims against assets transferred to a liquidating corporation, then no tax shall be collected on account of such liquidating corporation which shall diminish the assets thereof available for the payment of the depositors.

The Government has adduced another reason why there should not be a refund of the tax. It contends that since the tax was assessed against the Title Mortgage & Management Company, the plaintiff, in paying it in his capacity as receiver for the Title Guarantee & Trust Company, was a volunteer and that a tax levied against one person and voluntarily paid by another cannot be recovered. We do not think that the receiver in this instance was a volunteer. He paid the tax because of a clause in the reorganization plan which provided that the costs of reorganization should be paid out of certain funds in his hands. The parties concerned were agreed that this clause required the receiver to pay the tax, and procured an order from the Circuit Court of Baltimore City directing him to do so. For cases bearing upon the right of a voluntary payor to recover a tax illegally exacted, see: Wourdack v. Becker, 8 Cir., 55 F.2d 840, certiorari denied, 286 U.S. 548, 52 S.Ct. 501, 76 L.Ed. 1285; Clift & Goodrich Inc. v.

company or against assets transferred from it to an individual or corporate trustee or agent, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, such individual or corporate trustee or such agent, which shall diminish the assets thereof which are available for the payment of such depositor claims and which are necessary for the full payment thereof.

"(c) Any such tax so collected shall be deemed to be erroneously collected, and shall be refunded subject to all provisions and limitations of law, so far as applicable, relating to the refunding of taxes, but tax so abated or refunded after the date of the enactment of the Revenue Act of 1938 shall be reassessed whenever it shall appear that payment of the tax will not diminish the assets as aforesaid. The running of the statute of limitations on the making of assessment and collection shall be suspended during and for ninety days beyond, the period for which, pursuant to this section, assessment or collection may not be made, and a tax which has been abated may be reassessed and collected during the time within which, had there been no abatement, collection might have been made."

[3] (a) Section 3798(c) of the Internal Revenue Code is amended to read as follows:

"(c) (1) Any such tax collected, whether collected before, on, or after the date of enactment of the Revenue Act of 1938, shall be deemed to be erroneously collected, and shall be refunded subject to

all provisions and limitations of law, so far as applicable, relating to the refunding of taxes.

"'(2) Any tax, the assessment, collection, or payment of which is barred under subsection (a) of this section, or any such tax which has been abated or remitted after May 28, 1938, shall be assessed or reassessed whenever it shall appear that payment of the tax will not diminish the assets as aforesaid.

"'(3) Any tax, the assessment, collection, or payment of which is barred under subsection (b) of this section or any such tax which has been refunded after May 28, 1938, shall be assessed or reassessed after full payment of such claims of depositors to the extent of the remaining assets segregated or transferred as described in subsection (b).

"'(4) The running of the statute of limitations on the making of assessment and collection shall be suspended, during, and for ninety days beyond, the period for which, pursuant to this section, assessment or collection may not be made, and a tax may be reassessed as provided in paragraphs (2) and (3) of this subsection, and collected, during the time within which, had there been no abatement, collection might have been made.'

"(b) The term 'agent' as used in 3798(b) of the Internal Revenue Code shall be deemed to include a corporation acting as a liquidating agent.

"(c) The amendments made by this section shall be effective as of the date of enactment of the Revenue Act of 1938."

United States, 2 Cir., 56 F.2d 751; Central Aguirre Sugar Co. v. United States, Ct. Cl., 2 F.Supp. 538; Ohio Locomotive Crane Co. v. Denman, 6 Cir., 73 F.2d 408; certiorari denied 294 U.S. 712, 55 S.Ct. 508, 79 L.Ed. 1246; White v. Hopkins, 5 Cir., 51 F.2d 159; Aaron v. Hopkins, 5 Cir., 63 F.2d 804.

The judgment of the District Court will therefore be affirmed but without prejudice to the Government to assess and collect the tax if funds are available after the claims of the bank's depositors have been satisfied, and if it be found that the certificates are within the purview of section 901 of title 26 U.S.C.A.