## NATIONAL COMMERCIAL TITLE & GUARANTY CO. v. KELLY.

### Civil No. 651.

District Court, D. New Jersey.

June 14, 1941.

Lindabury, Steelman, Zink & Lafferty, of Newark, N. J. (by James L. R. Lafferty, of Newark), for plaintiff.

William F. Smith, Acting U. S. Atty., of Newark, N. J., Samuel O. Clark, Jr., Asst. Atty. Gen, and Andrew D. Sharpe and Lyle M. Turner, Sp. Assts. to Atty. Gen., for the defendant.

FORMAN, District Judge.

On and before March 4, 1933, the plaintiff was engaged in the business of lending money upon bonds and mortgages and selling such bonds and mortgages with the principal thereof and interest thereon guaranteed as to payment. These sales were made in three ways as follows:

1. Whole mortgages were assigned with a guaranty accompanying the assignment.

2. Certificates of participating interest in single mortgages were sold guaranteed as to payment of principal and interest.

3. Certificates of interest in groups of mortgages were sold guaranteed as to payment of principal and interest.

In addition thereto, certain companies were merged into the plaintiff which thereupon became obligor upon such companies' outstanding issues, which were bonds of those companies secured by deposits of bonds and mortgages.

On March 6, 1933, the President of the United States proclaimed a bank holiday, and thereafter by executive order extended the proclamation to apply to corporations engaged in the business in which plaintiff was then engaged. The effect of the proclamation of the executive order was to suspend the plaintiff's business activities.

On March 10, 1933, the President issued an executive order authorizing the appropriate authority in each state to permit certain institutions including plaintiff to perform their usual banking functions under such regulations as might be prescribed by such authority. Pursuant thereto and on March 16, 1933, the legislature of the State of New Jersey enacted Chapter 71, page 133, of the Laws of 1933, entitled "An Act concerning guaranteed mortgages and interests in or obligations secured by mortgages issued or guaranteed

by any insurance company, mortgage guaranty company, bank, trust company or other company of this State, and conferring powers upon the Commissioner of Banking and Insurance with respect thereto, and upon such companies".

On March 21, 1933, the Commissioner of Banking and Insurance of the State of New Jersey promulgated "General Order No. 1, Affecting the Business of Mortgage Guarantee Companies", which governed the operation of such companies, including the plaintiff, and Section 8 thereof reads as follows: "As soon as practicable and not later than June 1, 1933, each such company shall submit to the Commissioner such methods as it has adopted, or proposes to adopt, in the interest of the holders of its guaranteed mortgages and interests in mortgages, for the purpose of meeting the conditions resulting from the present emergency, so that the Commissioner may take such steps as in his judgment are advisable to conserve the assets of such companies and secure ratable and equitable application thereof, and provide proper safeguards for the security of those having claims thereon."

Pursuant to this Order the plaintiff on January 10, 1934, proposed a plan for its further operation, which plan was approved by order of the Commissioner of Banking and Insurance dated May 27, 1935, and became effective on July 1, 1935.

Obligations of the plaintiff on July 1, 1935, the date when the Plan became effective, were of the following types and in the following amounts:

(1) Group Certificates in the amount of $14,531,014.27 guaranteed as to payment of principal and interest.

(2) Obligations in the form of Group Certificates of the Home Title Guaranty Company, a company merged into the plaintiff, in the amount of $46,200.

(3) Obligations of the City Mortgage Guaranty Company, a company merged into the plaintiff in the form of Group Certificates in the amount of $468,000.

(4) Obligations of the Mortgage and Title Guaranty Company, a company merged into the plaintiff in the form of Group Certificates in the amount of $262,100.

(5) Certificates evidencing participation in specific mortgages, guaranteed as to payment of interest and principal in the amount of $1,366,424.07.

(6) Policies guaranteeing the payment of principal and interest on specific whole mortgages assigned by the plaintiff to policy holders in the amount of $1,410,347.11.

The plan was submitted to the holders of the above mentioned obligations of the plaintiff and upon their approval their securities were endorsed in one of the two following manners:

"(a) This instrument is subject to the terms, agreements and conditions of a plan of operation proposed by the National Commercial Title and Mortgage Guaranty Company; submitted to the owner hereof January 10, 1934; approved by the Commissioner of Banking and Insurance of New Jersey by order dated May 27, 1935; made effective by The National Commercial Title and Mortgage Guaranty Company on July 1, 1935, and duly consented to and agreed to by the owner hereof.

"The National Commercial Title and
Mortgage Guaranty Company
"By————————————
"President
"Vice-President

"(b) This certificate is subject to the terms of a plan of operation proposed by The National Commercial Title and Mortgage Guaranty Company, submitted to investors under date of January 10, 1934, approved by the Commissioner of Banking and Insurance of New Jersey by order dated May 27, 1935, and effective July 1, 1935, to which reference is hereby made, which provides, among other things, for extension of maturity five years beyond maturity herein fixed, cancels death clause and clause for acceleration of principal payments, and authorizes payment on account of interest during the five-year period ending June 30, 1940, of not less than 3% per annum."

The Commissioner of Internal Revenue imposed stamp taxes only with respect to those bonds, mortgages or other securities issued by the plaintiff as to which the holders thereof consented to the plaintiff's plan of operations. The total tax claimed was in the amount of $17,288.10. Of this sum $1,282.60 represented taxes on policies guaranteeing the payment of principal and interest on specific whole mortgages assigned by the plaintiff to the policy holders.

The pertinent statutes under which the taxes were assessed are as follows:

"* * * there shall be levied, collected, and paid, for and in respect of the several

342

bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this title * * * the several taxes specified in such schedule." Revenue Act of 1926, Section 800, 26 U.S.C.A.Int.Rev. Acts, page 284.

"* * * On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered from, known generally as corporate securities, on each $100 of face value or fraction thereof, 5 cents: Provided, That every renewal of the foregoing shall be taxed as a new issue * * *." Revenue Act of 1926, Tit. 8, Section 808, Schedule A(1), 26 U.S.C.A. Int.Rev. Acts, page 287.

The amount claimed represents stamp taxes assessed by the Commissioner of Internal Revenue on the ground that the extension of the maturities of the bonds and certificates constituted renewals of such instruments within the meaning of the above statutes, and within the meaning of Article 8 of Regulations 71 providing as follows: "An agreement extending a mortgage upon maturity, where a bond is secured by the mortgage and such agreement operates to renew the bond, subjects the latter to stamp tax as a renewal." The Commissioner in his memorandum denying an abatement of the taxes pointed out that the above Regulation applies to extension of unmatured corporate bonds as well: Campbell River Timber Co. v. Vierhus, 9 Cir., 86 F.2d 673, 108 A.L.R. 763; Sheldon v. Mississippi Cottonseed Products Co., 5 Cir., 81 F.2d 169. He rejected the contention that the renewal was involuntary, since the holders of the plaintiff's obligations consented to the plan of operations.

Herein, plaintiff argues that its business is affected with a public interest and that the Commissioner of Banking and Insurance under the Act of March 16, 1933, enacted by the Legislature of the State of New Jersey was acting within the field of police powers. The defendant does not contest this proposition. The issue in this respect is confined to whether or not these taxes interfere with the police powers of New Jersey. Plaintiff refers us to the cases of Ambrosini v. United States, 187 U.S. 1, 23 S.Ct. 1, 47 L.Ed. 49 and Indian Motocycle Co. v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277. In the former case the claim of the United States

for stamp taxes upon the issuance of bonds to saloon keepers required by a statute of Illinois was disallowed. This determination depended upon an exception in the statute providing for the tax and not upon constitutional issues as presented herein. In the latter case the Supreme Court refused to allow an excise tax upon the sale of motorcycles to a municipal corporation to be used in its police service, because a direct burden upon a governmental function was conceived. Herein, the burden of taxation does not fall upon the State of New Jersey directly or indirectly. The state has no financial interest in the instruments involved.

The next problem is whether or not the statute itself embraces the transaction herein. It is argued that the extension of maturity and decrease in interest rate on the various obligations pursuant to the plan were in effect a reorganization of the plaintiff's business; that the plan of operations, although consented to by the holders of the various obligations, was actually accomplished at the direction of the Commissioner of Banking and Insurance, and, hence, was his act and not the act of the plaintiff or the holders of its obligations.

In the case of United States v. Powell, 4 Cir., 95 F.2d 752, the receivers of a corporation issued certificates pursuant to court decrees upon which the United States claimed a documentary tax. The court pointed out that under the statute the tax should be applied only when the securities were issued by a corporation and that since the securities were issued by the receivers the statute was inapplicable. It stated: "The object of the stamp tax provisions of the Revenue Laws is evidently to place a tax on the carrying on of a corporate function. A receivership is usually instituted and carried on for the purpose of winding up or at least reorganizing a corporation, and is a function of the court to those ends. The possession and control of a receiver constitutes an ouster of corporate management and control, United States v. Whitridge, 231 U.S. 144, 34 S.Ct. 24, 58 L.Ed. 159, and the issuance of receivers' certificates is in no sense a function of the corporation whose property is in the hands of a receiver, and no act of the corporation is necessary for their issuance." 95 F.2d 752, 754.

In the case of Consolidated Gas Electric Light & Power Co. of Baltimore v. United States, D.C., 27 F.Supp. 206, af-

firmed, 4 Cir., 108 F.2d 609, a bank which had been closed by presidential proclamation paid 5% of the funds on deposit to its depositors and the balance due was evidenced by certificates of indebtedness. A depositor assigned a certificate to the plaintiff and the question was whether or not the documentary tax should be applied to such transfer. The court determined that certificates of indebtedness were not "known generally as corporate securities", and, hence, the statute imposing the tax was inapplicable. It stated: "The acceptance of these certificates by both depositor and general creditor was in essence compulsory. None of them considered that he was making an 'investment.' He did not expect to derive any income or profit therefrom. He knew that in all likelihood, he must sustain a loss and he has in fact done so, up to the present time." 27 F.Supp. 206, 209. The court also noted that this type of investment was not intended under the Regulations of the Tax Department to be taxed: "Thus, these Regulations indicate that the Department itself has felt that the Congress was not seeking to tax either the issuance or transfer of instruments which were merely evidence of an effort on the part of insolvent banking institutions to liquidate their obligations to their depositors. 27 F.Supp. 206, 210.

The facts of the case of United States v. Powell are distinguishable, since in that case the certificates were issued by the receivers and not by the corporation. Also, the facts in the case of Consolidated Gas Electric Light & Power Co. of Baltimore v. United States, supra, are easily differentiated, since certificates of indebtedness were not contemplated by the statute. These cases have some relevancy, however, because they throw some doubt upon the intention of Congress to tax securities issued in an effort to effect a reorganization.

In the case of Weil v. United States, 2 Cir., 115 F.2d 999, the Superintendent of Insurance of New York pursuant to state law took over legal title to bonds and mortgages guaranteed by the New York Title and Mortgage Co. Afterwards the Superintendent transferred these assets to the Mortgage Commission set up to administer and reorganize guaranteed mortgage properties. The Mortgage Commission Act of New York provided that when a plan of reorganization was approved by the court the Commission should terminate its functions. The Mortgage Commission proposed such a plan of reorganization providing for the appointment of trustees to take over the assets held by it. This proposal was accepted by the certificate holders, approved by a court, and the transfer to the trustees was perfected. The government asserted a stamp tax upon the transfer from the Commission to the trustees pursuant to Schedule A(9), Title VIII of the Revenue Act of 1926 as amended by Section 724(a) of the Act of 1932, 26 U.S. C.A.Int.Rev. Acts, page 297. The amendment provides as follows: "On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the instruments mentioned or described in subdivision 1 * * * whether made by any assignment in blank or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale * * *." The court held that transfers wholly by operation of law and not through the voluntary act of the parties were not taxable, e. g., the transfer to the Superintendent of Insurance and the transfer from him to the Mortgage Commission. The court distinguished the case from those examples on the ground that the plan of operation was conditioned upon court consent which in turn was conditioned upon a two-thirds consent of the certificate holders. For that reason the transfers were not "wholly by operation of law." The court stated: " * * * We think that a transfer in pursuance of an order dependent on such a consent cannot be regarded as 'wholly by operation of law.' The certificate-holders had the option either to require liquidation of their securities by the Mortgage Commission or to reject the plan proposed and obtain, if possible, the approval of some other plan which they might think more advantageous. It is true that both before and after the order approving the plan was made they had substantially the same equitable interest in the mortgages and that they would have it under any other plan which would have received the sanction of the court, but the consent of two-thirds was necessary in order that the transfer should be carried out and this requirement made the transaction differ substantially from one where there was a mere substitution of trustees after the first trustee had died or become incapacitated and his successor was chosen solely through an order of the court or in accordance with

**344**

the terms of the original trust agreement. Here there was not only a change in the trustees but the plan approved also imposed duties upon them which varied from those of the Superintendent of Insurance or the Mortgage Commission." 115 F.2d 999, 1002.

It appears that the court in the above case considered all the alleged extenuating circumstances offered in relief of taxation that have been offered herein. There the plan required court approval; here the plan required the approval of the Commissioner of Banking and Insurance. In both cases the consent of the certificate holders was required and in both cases the certificate holders exchanged their holdings for different securities, by virtue of economic pressure. We are constrained to follow the guidance established in this case and, therefore, we conclude that the claim for refund must be denied.

Counsel have dealt separately with the claim for refund of taxes assessed in the amount of $1,282.60 against the policies guaranteeing the payment of principal and interest on specific whole mortgages assigned by the plaintiff. Plaintiff argues in this respect that the obligations guaranteed by it were those of individuals and that the corporate guarantee of payment did not make them corporate instruments.

█ The defendant points out that this contention was never presented to the Commissioner of Internal Revenue, but it argues the point on the assumption that, if presented, the contention would have been rejected. In such a case we do not understand that defendant contends that we are without jurisdiction to consider the merits of this issue. On the contrary we feel that defendant joins with the plaintiff in bringing this issue squarely before us. See Tucker v. Alexander, 275 U.S. 228, 48 S. Ct. 45, 72 L.Ed. 253.

Plaintiff relies upon the case of Mitten Bank Securities Corp. v. United States, D. C., 24 F.Supp. 198, in which an individual issued his own bonds secured by mortgages on real estate with payments of principal and interest guaranteed by a corporation. The question was whether or not stamp taxes were assessable. The court overruled the government's argument that an individual bond fortified by a guaranty of a corporation is no different from a security issued by a corporation, and should be so classified. The court, instead chose

to follow the literal wording of the Act, holding them free from the documentary tax.

The defendant endeavors to overcome the force of this decision by analogy. It contends that if the corporation in the Mitten case had not guaranteed the bonds issued by the individual, but had held them and issued certificates of interest in them, the certificates which replaced the bonds would have been taxable.

█ We cannot be guided by the merit of the analogy presented to us by the defendant, because as pointed out by defendant in other parts of its brief of law offered to us, we are not concerned with what might have occurred in some other form of transaction, but with the actual transaction herein involved. Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639. Therefore, we feel bound by the case cited by plaintiff and conclude that the taxes exacted in this respect were not authorized by law.

Judgment should be entered in accordance with the findings herein contained.